## HENRY B. MYERS COMPANY *v.* ANNAPOLIS BANKING & TRUST COMPANY.

[No. 34, January Term, 1936.]

*Decided February 20th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Eugene P. Childs,* for the appellant.

*Ridgely P. Melvin,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

The question here presented relates to an alleged preferential claim asserted by the Annapolis Banking & Trust Company in the assets of the Arundel Supply Company. This is contested by the Henry B. Myers Company, the appellant, which recovered two judgments in the Circuit Court for Anne Arundel County on the 1st day of Febru-

ary, 1933, and on the 15th day of November, 1933, had a *fieri facias* issued on each of these judgments and placed in the hands of the sheriff on November 16th, 1933, with the instruction, "Do not make levy, hold," in consequence of which no levy was ever made under these writs. Walter H. Myers, the president and general manager of the appellant corporation, authorized his counsel to give this order. In his testimony he stated: "We had always been very friendly with the Arundel Supply Company and I did not want to see them put out of business any sooner than possible, and when we issued the *fi. fa.* on that, I asked Mr. Childs, if possible, to hold that in the hands of the sheriff for at least a short while to see if any other creditor would come up and try to issue a *fi. fa.* on it, and Mr. Childs told me yes, as long as it did not go past that term of court, the present term of court; and I asked him then to hold it unless somebody else came up with a *fi. fa.,* and he assured me if anybody else did issue one that the first or prior one the sheriff had in his hands would be the first one issued on." The witness further stated that he heard the instructions given to the sheriff. In pursuance of these directions the writs were indorsed, "hold," and placed in the files at the sheriff's office, and there they remained without further instructions.

The Annapolis Banking & Trust Company recovered a judgment against the Arundel Supply Company dated March 16th, 1933, and on December 7th, 1933, a *fieri facias* was issued thereon, upon which a levy was made on the personal property of this company on December 11th, 1933. On January 5th, 1934, the Arundel Supply Company executed a deed of trust for the benefit of its creditors and the trustee took possession of all the property of the company, including the personal property so levied upon.

In the administration of the trust estate this property was sold, and in the distribution of the proceeds of sale the claim of the Annapolis Banking & Trust Company was allowed as a preference over that of the Henry B.

Myers Company, and to this allowance and preference the Henry B. Myers Company filed exceptions. These judgment creditors entered into the following agreement: "That in presenting this matter for determination by the court on these exceptions, whatever lien or liens may have accrued under either of the judgments involved in these exceptions, namely, the judgments of The Henry B. Myers Company and the Annapolis Banking & Trust Company, shall be preserved and considered applicable to the funds in the hands of the Trustees, and that said funds shall be distributed accordingly, in the order of the priority of said liens as the court may determine."

Thus were the respective rights and priorities of these two judgment creditors asserted or impressed upon the trust funds arising from the sale and in the hands of the trustees. To the exceptions to the audit by the Myers Company the Annapolis Banking & Trust Company filed an answer asserting its preference and denying the preference claimed by the appellant. On the 27th day of September, 1935, the chancellor passed an order dismissing the exceptions and ratifying the audit. From this order the appeal herein is taken.

Out of this recital of facts there arises the obvious question: Can a judgment creditor acquire a continuing lien by the mere issuance of an execution, and thus convert the writ into an agency with which to hinder or delay, or entirely defeat, other judgment creditors in asserting similar rights by execution? Such is not the purpose of a writ of *fieri facias,* and it cannot be so used. In dealing with this question Judge Parke stated, in the case of *First National Bank v. Corporation Commission,* in 161 Md. 508, 157 A. 748, 751: "If, however, it should appear that the levy was not made in good faith, nor for the purpose of its enforcement, as if the plaintiff's object was merely to obtain some security or to prevent some other levy being made in advance of his own, or to hinder or delay other creditors of the debtor, then the levy under the writ of attachment must be adjudged fraudulent and void."

This question is further amplified in 2 *Freeman on Executions* (3rd Ed.) sec. 206, where it is stated: "The only proper use of an execution is to enforce the collection of a debt, and to enforce it with a considerable degree of diligence. To employ it for other objects is inconsistent with its nature, and such a perversion from its legitimate purposes as brings upon it the penalty prescribed by the statute of Elizabeth. The plaintiff in execution may desire to allow the defendant time in which to make payment, and yet may wish to save himself from a hazard arising from his delay to enforce the collection of his judgment. He is likely, therefore, to take out execution with a view of binding defendant's property, but with no intent to make any immediate levy or sale. In other words, he seeks to convert an execution into a mere mortgage."

The principles here announced are so well settled that they require no further consideration. 6 *C. J.* 307; *Bump on Fraudulent Conveyances* (3rd Ed.) p. 517; *First National Bank v. Corporation Commission, supra,* and authorities there cited.

The testimony shows that it was not the purpose of the appellant to obtain a speedy settlement of its judgments, and that the writs were to be used, in the first instance, for the purpose of obtaining a security and to prevent or hinder or delay others from making levies and acquiring liens in advance of its own. To obtain such security seems to have been the principal object of the appellant. This the law does not sanction or permit. The question as to the jurisdiction of a court of equity to remedy a defective or irregular return to a writ of *fieri facias* or attachment need not here be considered. The decision in this case rests upon the principles above stated, rather than upon the question of procedure. We find no error in the order of the chancellor from which this appeal is taken, and that order must be affirmed.

> *Order affirmed, with costs to be paid by the appellant.*