## TVARDEK *v.* TVARDEK

[No. 203, September Term, 1969.]

*Decided February 16, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Henry J. Monahan,* with whom were *H. Thomas Sisk, Laurence Levitan, M. Michael Cramer* and *Paul H. Weinstein* on the brief, for appellant.

*Jackson Brodsky,* with whom was *D. Randolph Cole, Jr.* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

We must dismiss the appeal in this case as prematurely taken.

The appellant, Stepan F. Tvardek (Stepan), and the appellee, Nancy E. Tvardek (Nancy), were divorced *a vinculo matrimonii* by a decree of the Circuit Court for Montgomery County, dated August 25, 1961. This final decree awarded Nancy the custody of the three minor children and awarded her for child support the sum of $50.00 every two weeks. In 1964 Stepan voluntarily elected to increase the child support payments to $130.00 a month.

On October 8, 1968, Nancy filed, in the same divorce suit, a Petition to Modify the Order for Support, alleg-

ing the above facts and reciting the substantial change of circumstances requiring an increase in the child support payments. It was also alleged that Stepan was a civilian employee in the Department of the Army being paid at a GS-11 level in the approximate amount of $10,-000 a year. The lower court on October 14, 1968, passed an order requiring Stepan to show cause on or before November 15, 1968, at 10:00 A.M. why the Order of August 25, 1961, in regard to child support should not be modified, provided copies of the Petition and Order were served on Stepan "or his attorney of record" on or before November 5, 1968. On November 4, counsel for Nancy filed a certificate stating that a copy of the Order of Court of October 14 had been "mailed, First Class, postage prepaid, to Samuel Gordon, Esq., Attorney for Defendant 8605 Cameron Street, Silver Spring, Maryland, this 31st day of October, 1968." Mr. Gordon was the attorney of record for Stepan in the suit and had not stricken out his appearance prior to the above-mentioned proceedings.

On May 13, 1969, Stepan, by new counsel, filed a Motion Raising Preliminary Objections pursuant to Maryland Rule 323 a (2) praying that the Petition and Show Cause Order to increase the child support payments be dismissed. Alleged as grounds for the motion were the following:

"1. The defendant is a resident of the Fed. Rep. of GERMANY. He has not been served in Maryland nor has he consented to the jurisdiction of this Court. And he may not be served in this action under the Constitution and the laws of Maryland or the Due Process Clause of the 14th Amendment to the Constitution.

"2. What plaintiff has attempted to do is to serve process on the former attorney of the defendant. (See Show Cause Order, dated October 14, 1968.) However, such attorney has not represented defendant since the original divorce in this case was granted on August 25, 1961. Defendant has not authorized such attorney to

accept Service of Process nor to negotiate or otherwise answer in his behalf."

An affidavit of Stepan, sworn to in Munich, Germany on May 9, 1969, was attached to the Motion. It stated that he had read the foregoing Motion subscribed by him and "that the contents thereof are true and correct to the best of his knowledge, information and belief." This Motion and attached affidavit, together with a Memorandum of Points and Authorities, were mailed to counsel who had filed Nancy's petition for increasing the child support payments.

On May 16, 1969, Nancy filed an Opposition to Motion Raising Preliminary Objections alleging that Code (1957) Art. 16, § 66 conferred jurisdiction upon the Courts of Equity of Maryland, *inter alia,* to hear all matters relating to the custody and support of minor children and to modify orders or decrees for such custody and support as future situations might demand; that counsel of record had not stricken his appearance under Rule 125 a; and, that service of the Petition to Modify Order for Support had been accomplished in accordance with Rule 306 c, providing for service of a pleading upon an attorney of record for the adverse party unless actual service upon the party is ordered by the court.

Mr. Gordon struck out his appearance as attorney for the defendant on May 23, 1969.

A hearing on the Motion Raising Preliminary Objections was held before Judge Pugh on June 27, 1969, who, on the same day, *denied* the Motion. This denial of the Motion appears on the docket entries, but there is no *written order* in the case denying the Motion. Stepan entered an appeal from Judge Pugh's "order" of June 27 on July 24, 1969.

Assuming, *arguendo,* that the docket entry of June 27, 1969, was a sufficient order in an equity suit to justify an appeal, nevertheless, we must dismiss this appeal be-

cause that "order" was interlocutory and not a final order from which an appeal will lie to this Court. Although no Motion to dismiss the appeal on this ground was made by Nancy, we will dismiss the appeal for this reason, *sua sponte*. In the recent case of *The Hillyard Construction Co., Inc. v. Lynch,* 256 Md. 375, 260 A. 2d 316 (1970) involving a motion to quash writs of summons because (1) the principal office of the corporation was in Baltimore County, (2) one of the codefendants was a resident of that county, and (3) neither the corporation nor the individual codefendant was regularly engaged in business in Worcester County where the suit was filed, Judge Singley stated for the Court:

> "We propose to dispose of the appeal, however, for a reason not raised by the appellees, as Maryland Rule 835 a 2 permits, *Harkins v. August,* 251 Md. 108, 246 A. 2d 268 (1968). It has long been established that no appeal will lie from an order overruling a motion to quash a writ of summons, (citing authorities) * * * because it is interlocutory only, and not a final judgment. It is much like the *dismissal* of a motion to quash a writ of attachment, or of replevin or of an order overruling a demurrer, from none of which will an appeal lie. *Mitchell v. Chesnut,* 31 Md. 521, 527 (1869); *Baldwin v. Wright,* 3 Gill 241, 246 (1845); *Welch v. Davis,* 7 Gill 364 (1848); *Reynolds v. Russler,* 128 Md. 606, 98 A. 75 (1916); Code (1957, 1968 Repl. Vol.) Art. 5, § 1.
>
> "Our predecessors gave the reason for the rule in *Boteler v. State ex rel. Chew,* 7 G & J 109, 113 (1835):
>
> " 'To permit an appeal from any decision of the Court below, which does not finally settle the rights of the party, or conclude the cause, would enable either plaintiff, or defendant to protract the suit to an almost indefinite period.' "
> (256 Md. 379, 260 A. 2d at 318).

See also *Guerreni v. Sainsbury*, 139 Md. 246, 114 A. 874 (1921).

Maryland Rule 323 is taken largely from Federal Rule 12 (b). It is to be noted that in the commentary to this Federal Rule (28 U.S.C.A., Rules 12 to 16, page 20) under the heading of "Operation," the commentators stated:

> " 'The new Rules have made no change in the law concerning the effect of overruling a motion based on jurisdiction, venue or process. The party simply answers over, preserving his objection, and in the event of an adverse judgment, may raise the point on appeal. Formerly it was indicated that the objection should be renewed in the answer in order to preserve it; but this would seem to be an unnecessary step, and it has been held to be improper.'
> 16 Cal. State Bar Journal 153."

The United States District Court for the District of Maryland has indicated that this is the effect of the Federal Rule in *Speir v. Robert C. Herd & Co., Inc.*, 189 F. Supp. 436 (1960).

In view of the fact that the present case will be remanded to the trial court for further proceedings, and the likelihood that the point raised by Stepan in his Motion Raising Preliminary Objections will be presented to the trial court after the remand, we deem it wise, pursuant to Maryland Rule 885, to express our opinion on the merits of that point so that the expense and delay of another appeal to this Court may possibly be avoided.

In our opinion, the trial court did have jurisdiction over Stepan by the service of notice upon his then attorney of record in the divorce suit. The decision of our predecessors in *McSherry v. McSherry*, 113 Md. 395, 77 A. 653 (1910) is dispositive of this question. In *McSherry*, the parties were divorced *a vinculo matrimonii* by the Circuit Court for Frederick County, in equity, on May 7, 1907. In the same decree, the lower court awarded custody of the minor children to the plaintiff wife and

provided that the defendant husband should pay to the wife "as alimony and for the maintenance of the said children. . .such sum or sums of money as may be hereafter determined by this Court upon the application of any of the parties in interest." The parties, prior to the decree, had entered an agreement that the wife should be paid such sums of money by the husband for alimony and maintenance of the children "as may be hereafter determined by your Honorable Court, and that the amount of said alimony and maintenance be reserved by said decree for future determination upon the application of any of the parties in interest." Thereafter, there were no further proceedings in the case until on June 10, 1909, the plaintiff wife filed a petition reciting that her husband was employed in Chicago, Illinois at a yearly salary of about $3,000, had not contributed to the support of the wife or maintenance of the children since October, 1906, and praying that the Circuit Court proceed to determine, in accordance with its previous decree, the amount of alimony and maintenance for the children. The Circuit Court on June 10, 1909, passed an order for the payment by the husband of $100 a month for alimony and maintenance of the children, unless cause to the contrary be shown by June 21, 1909, and provided that a copy of the petition and order "be served upon the said defendant or his attorney of record" on or before June 12, 1909. The petition and order were served on the husband's attorney of record at the time of the original decree and who had not stricken out his appearance. An answer to the petition was filed on June 11, 1909, in which it was stated that the attorney of record was not "the attorney for the defendant in relation to the matters mentioned in said petition" and that "he had 'no authority to represent the defendant,' in said matter." On June 30, 1909, the Circuit Court entered a final decree for the payment of the $100 a month and thereafter counsel for the husband filed a motion to strike out the decree because (1) there was no service of process upon any person authorized to accept service; (2) the Court

had no jurisdiction over the husband when the decree of June 30, 1909, was entered; (3) the husband was a non-resident at the time of the decree and beyond the jurisdiction of the Court; and (4) for the reasons set forth in the answer of June 11, 1909. The Circuit Court passed an order overruling the motion to strike out the decree of June 30, 1909. This order was affirmed on appeal. After noting that the parties had agreed that the amount of alimony and maintenance of children would be later determined by the Circuit Court and that the Circuit Court had reserved this question in the original divorce decree of May 7, 1907, Judge Thomas, for this Court, stated:

> "* * * [T]he Court below, on the application or petition of the plaintiff, passed the order *nisi*, and required a copy of the petition and order to be served on the defendant or his attorney of record, but personal service of a copy of the petition and order upon the defendant within the limits of the State was not necessary in this case in order to give the Court jurisdiction to pass the decree of June 30th, for, as we have said, after the Court had acquired jurisdiction over the parties, they, through their attorneys, agreed that the amount of alimony, etc., should be determined by the Court upon the application of either of the parties, and jurisdiction was accordingly retained by the Court for that purpose. Service of a copy of the petition and order upon Frank L. Stoner, Esq., who was the solicitor of record for the absent defendant, and who signed the agreement of counsel, was the most effective means of giving the defendant notice of the petition and order, and nothing more was required."

(113 Md. at 402-403, 77 A. at 655-656).

Stepan seeks to distinguish the *McSherry* case from the case at bar on the grounds that (1) the reservation

in the decree was the result of the agreement of the parties and (2) the presence of the verified motion in the present case that his former counsel had not been authorized to represent him since the entry of the original decree. In our opinion, *McSherry* is not distinguishable upon these grounds. In the first place, the Property Settlement Agreement of May 30, 1958, between Stepan and Nancy, which was filed in the original divorce proceedings as an exhibit, provided in Paragraph 12, as follows:

> "12. That the provisions pertaining to the support and custody of the minor children may at any time be changed by agreement of the parties or order of any court of competent jurisdiction where the interest of the minor children and circumstances of the parties so require."

Paragraph 1 of the Property Settlement Agreement provided for the wife's custody of the minor children and Paragraph 2 provided for the payment of $50 every two weeks by the husband for the support of the minor children. These provisions were incorporated in the Decree of August 25, 1961, by reference to the Property Settlement Agreement.

It is thus seen that the parties in the present case had provided by agreement that the circuit court—obviously a court of "competent jurisdiction" — should have the right to change the provisions of the agreement (these provisions were incorporated into the Decree by reference) in regard to custody and support of the minor children, thus making the present case closely analogous to the *McSherry* case in this regard.

The *McSherry* case, however, was decided in 1909 prior to the passage of the Act of 1920, Chap. 573, now Code (1966, Repl. Vol.), Art. 16, § 66 which specifically gives the courts of equity in Maryland the power to provide for the custody and support of children and provides that the equity court may "from time to time thereafter an-

nul, vary or modify its decree or order relating to such child or children * * *." After the passage of this statute, the equity courts had the reserved power to modify child support decrees or orders regardless of any agreement of the parties to the contrary. This is explicitly provided by the Act of 1931, Chap. 220 now Code (1966, Repl. Vol.), Art. 16, § 28. See *Price v. Price*, 232 Md. 379, 194 A. 2d 99 (1963); *Bebermeyer v. Bebermeyer*, 241 Md. 72, 215 A. 2d 463 (1965). In summary, the statutory provisions mentioned "reserve" to the equity court the power to change the provisions of its prior decrees or orders in regard to child support and also to modify any provision in that regard in an agreement of the parents if the best interests of the child so require. The question of future child support payments was "reserved" in the decree of August 25, 1961, as much so as it was in the decree in *McSherry*.

Secondly, the husband in *McSherry* contended, as does the husband in the instant case, that his counsel of record in the divorce suit was not authorized to accept service and was not the attorney for the defendant husband —also a non-resident when the petition to modify child support was filed—in relation to matters mentioned in the petition. The language used is somewhat different in the two cases, but the substance is the same. It is thus seen, that the *McSherry* case and the present case are quite similar and the decision in that case is controlling in the case at Bar. .

Stepan urges us, in any event, to overrule *McSherry* as being against the "weight of authority" on this point. The various cases relating to this question are collected in 62 A.L.R.2d 544, 557. Our examination of these cases does not indicate to us that the "weight of authority" favors Stepan's position. See in support of *McSherry*, *supra*, the following cases: *State ex rel. Jones v. Superior Court*, 78 Wash. 372, 139 P. 42 (1914); *Reynolds v. Reynolds*, 21 Cal. 2d 580, 134 P. 2d 251 (1943); *Kellogg v. Kellogg*, 302 Ill. App. 604, 24 N.E.2d 260 (1939) [applying a District of Columbia court rule]; *State ex*

*rel. Groves v. First Judicial Dist. Court,* 61 Nev. 269, 125 P. 2d 723 (1942); *Seaton v. Seaton,* 221 Ark. 778, 255 S.W.2d 954, 256 S.W.2d 555 (1953); *Massimino v. Massimino,* 5 Misc. 2d 1041, 162 N.Y.S.2d 646 (1957).

Notification of the attorney of record in what is considered to be a continuing equity suit satisfies procedural due process of law. This method of providing proper notice and an opportunity to defend in a continuing equity proceeding is reasonable and, indeed, in the present case resulted in Stepan's receiving actual knowledge of the modification proceeding.

At the argument of the case on appeal, counsel for the appellee Nancy stated that present counsel for Stepan had appeared before the Master in the Circuit Court and had offered in evidence, a statement of Stepan's income and other financial information. Counsel for both parties agreed that a transcript of the tape of those proceedings should be made and considered by this Court on the possible issue of a waiver by Stepan of any lack of personal jurisdiction of the lower court because of this proffer of evidence. We have received the transcript and indeed it does show that present counsel for Stepan, at a hearing before the Domestic Relations Master in the Circuit Court for Montgomery County, offered into evidence "Defendant's Exhibit #1, Equity Number 24367," which was received without objection. Counsel for Stepan, however, points out to us that subsequent to the filing of the appeal in the present case, Nancy "instituted a different and legally different proceeding by filing on November 13, 1961, a Petition for Pendente Lite Child Support and Other Relief," and that it was during the course of the hearing on this new petition that the appellant Stepan introduced the Financial Statement into evidence. Inasmuch as the introduction of this exhibit is not in the record in this case and arose in a hearing on a separate matter instituted subsequent to the appeal in the present case, we shall not pass upon the question of whether or not the introduction of the exhibit constituted a waiver. We prefer to leave this to the consideration by the lower

court upon the remand as and when the issue may come before that court in the course of the further proceedings.

Finally, we again—and hope for the last time—point out that orders and decrees *in equity* are *required* to be *in writing* and *signed by the Judge in the Equity Court.* In two prior appeals from the Circuit Court for Montgomery County, we have noted that the unfortunate practice of merely entering a ruling of the Judge upon the docket in the equity suit by the Clerk is apparently considered by the bar and bench to be sufficient; but it clearly is not. See *Mattingly v. Houston*, 252 Md. 590, 250 A. 2d 633 (1969); *Kennedy v. Foley, Receiver*, 240 Md. 615, 214 A. 2d 815 (1965). This improper practice has also occurred in other circuit courts. See *Grosse v. Beideman*, 239 Md. 283, 211 A. 2d 298 (1965); *Sellman v. Sellman*, 238 Md. 615, 209 A. 2d 61 (1965) and recently in *State's Attorney for Charles County v. Triplett*, 255 Md. 270, 257 A. 2d 748 (1969), (see Note 1 of the opinion in *Triplett*).

We have hesitated to dismiss appeals for the lack of a written order, signed by the lower court Judge and duly entered in the equity suit, because of the expense of appeals and the possible hardship on the litigants involved; but unless the bar and bench will accede to the proper chancery practice in this regard, we will have no alternative but to dismiss appeals for this reason.

> *Appeal dismissed, and case remanded for further proceedings, the costs to be paid by the appellant.*